Good morning. Kristen Erickson on behalf of the petitioner and opponent in this case, Mr. Cota. The limitation on government power is the key to the preservation of individual liberty. The Sixth Amendment limits the government's power to take a person's life for liberty, or in this case liberty for life for Mr. Cota, without, when the right to confront the accuser is denied. That is a cornerstone of our society and of our criminal justice system. And the Supreme Court, this is a very general and basic concept that's fundamental, and it goes back for decades. In Poynter v. Texas, the court said it cannot seriously be doubted at this late date, which was 1965, that the right to cross-examination is included in the right of an accused to a criminal case to confront the witnesses against them. And the court has pointed out in Maddox and in Poynter that the purpose for that is for the jury to be able to see the witness, address the witness's, you know, inconsistencies, to be able to look the witness in the eye, have the witness face-to-face. Counsel, don't we have a Crawford case now which creates the distinction between testimonial and non-testimonial statements? We do, we do. And Justice Scalia and Crawford set forth the long history that I've just talked about in terms of this being such a fundamental right. And he talks about cases such as Sir Walter Raleigh, where the controversy surrounding Sir Walter Raleigh's trial wasn't the method of questioning of the witness. It wasn't the location of the questioning. It was the fact that this witness's testimony, which comprised the entire case against Sir Walter Raleigh, was done without the witness ever showing up and without ever being seen. How is that testimonial about an 18-year-old girl telling her aunt what just happened to her? How is that testimonial? Well, it's testimonial because of this. You have to look at what occurred in this trial. You have a man who was sentenced to life in prison. An allegation of sexual assault was made to an aunt. But that was repeated then to the police. That statement was then, after this witness left and went back to Mexico never to return again, that statement was repeated to the police, to the prosecution, to the court, and ultimately to the jury. Forgive me for interrupting. The court and the prosecutor didn't testify. There was just the one leap. Correct. Which really goes back to my colleague's question. What's testimonial about this statement? What is testimonial about the statement is that it is being used as a substitute for live testimony. And that is, in and of itself, the fact that this is the testimony against the defendant. And the fact that... But under that construction, any statement that's used in a criminal trial would be testimonial. Well, that's not necessarily true because the court has set aside the parameters for that. And I think that Crawford, Davis, and basically the judge produced on Crawford, gives us all the tools we need to show that this is, in fact, testimonial. And I think we cannot ignore the court's reference to King v. Brazier in the Davis case, where what the court said was, look, Mr. Davis, the witness in your case was calling 911, and she's telling the police about this emergency that's ongoing. That is not a testimonial statement because this is something that we're trying to use in order to basically stop the crime or for public safety. But the court referred to King v. Brazier, which was a case in which, exactly like our case, a girl comes home, she tells her mother that she's been sexually assaulted, and the mother attempts to testify at the trial, and they said, absolutely not. We need the girl here to confront and cross-examine. And in Davis, the court said, look, this is not your situation, Mr. Davis. Your situation is different. So I don't think that we can divorce that statement in Davis, which was then repeated later on in Bryant in Justice Scalia's dissent on that. It's later repeated that these are the limitations. So the court is giving us this general principle of confrontation, and then it's giving us these examples and limitations within it. And in this case, what's really important is this was not a report of an ongoing emergency. Why not? Why not? I think that's really going to be helpful for me to understand. Why do you think this was not an ongoing emergency? Because the facts of the case in this case are very distinct. I mean, obviously every case falls on the facts. But what happens is this woman or girl, 18-year-old woman, is allegedly taken and sexually assaulted. She then is given the defendant's phone in the car to call her aunt. She calls her aunt and says, can you please come and unlock the gate? They pull in. Supposedly the petitioner or appellant drops her off. She walks to the gate. He meets her at the gate. This is a secure apartment complex. Could I stop you there? Forgive me for interrupting, but right now we're talking about some distance. And I don't know if you mean geographic distance between the site, the physical location of the sexual assault, and the time when she related her tale to her aunt, or if we're talking about the number of minutes that elapsed. Again, I'm trying to focus on whether this was an ongoing emergency. So how attenuated is it? And do we have that in the record? We do have that in the record. How many minutes elapsed? Well, the aunt basically indicates that the niece called her. It took her, I think, approximately five minutes to get to the gate. When she got to the gate, the sexual assault didn't happen at the gate. It happened earlier. Do we know how long it took her to drive from the minute the sexual assault occurred, or I should say was concluded, until? That's the time frame I'm trying to measure. Well, the evidence of that is approximately, and it's hard to determine, but it seems to be approximately 20 minutes when you glean that from everything that's in the record as far as what the aunt says. But I think really what's more important is the point in which the victim is released from the defendant's hold, let's just say. So even though the sexual assault occurred even earlier, I think that that probably wouldn't be the safe haven for her. Her safe haven is when the defendant lets her go. At the gate. At the gate. And I know that's not necessarily a good point for me, but I think that at the gate, once she is gone and she has been given the opportunity to contact her aunt, she then goes into the locked gate. It's a security, there's a security guard at the complex. She goes into the locked gate, finnet leaves, walks in the locked gate, and into her home where she's with her family. At that point in time is when she makes the statement. And there is absolutely not an ongoing emergency. I think that maps it out. She's reporting past events. That maps it out probably as an excited utterance, but it doesn't really confront the testimonial versus non-testimonial distinction. She's talking to her aunt for the purpose of furnishing evidence to be used in a prosecution. Is that what a reasonable person would be thinking she's doing? Well, a reasonable person. That's what's in her head? These are acts that are relevant to prove past criminal conduct, right? So she's talking to her aunt. And the aunt, as we know, the other thing that makes us know that they're safe is that they actually call the defendant and have him come back. So we know that they believe they're in a safe place. But to answer your question, the fact that this statement is the, what Justice Scalia says, and I'm going to try to put this directly, is the direct analog to what is said in the trial. So there's no difference between what she says to her aunt, which then results in essentially some vigilante justice but then calling the police and then the police coming out and saying, well, what is it that you said? So this was leading up to some justice, whatever justice that is. But again, that's true of all evidence that's ultimately used in a trial. I'm not sure you can use the use to which the evidence was put at trial to characterize it as testimonial or not. Where's the solemnity when she made the statement to her aunt? How would she know she's facing a prosecution for perjury if she's making something up? Why would a person think anything that she said is similar to giving a statement for use in a crime? Well, I don't think that whether or not the person believes they're going to be prosecuted for perjury if they make a statement to their aunt is the inquiry. That's true. The statement would be, is this a statement of past events, which we know it is, they've occurred before, that would reasonably be used in a prosecution? And I think when you report a sexual assault and a kidnapping, and then that ultimately results in calling the police and having all of this happen, that that is, in fact, a testimonial statement. This isn't a statement made to her aunt at the bar, oh, by the way, five years ago I was kidnapped and raped. That's different. I agree. How is that different than every 911 call? Why isn't every 911 call a call that the caller knows could be used in a prosecution? I'm going to continue to go, but I forgot to reserve my time. And we've taken quite a bit of time with questions, so we'll give you a few more minutes. Davis answers that question because Davis talks about the fact that you can have an emergency call that then becomes testimonial. So in Davis, basically what the court said is, look, we're not here to address whether or not the call became testimonial. But clearly it probably did, and maybe the jury heard some testimonial hearsay. But so the court actually addresses that issue and says, look, as long as these statements are being made in order to basically avert the emergency, to stop the emergency, because in Davis, basically the 911 caller says, oh, he left. Remember, she says, oh, he left. And at that point the court says, well, at that point the emergency is probably over, but we're not really called upon to talk about what happens after. All right. So the court basically addresses that issue and how a 911 call can change from one to the other. All right. Thank you. Let's hear from opposing counsel, please. Good morning, Your Honors. Christopher Beasley, Deputy Attorney General, on behalf of the Respondent. We start off, first of all, under AEDPA and that standard of review. And what we're looking for is whether the state court, whether its decision was contrary to or an unreasonable application of established, clearly established United States Supreme Court authority. What we're looking for is an error that is obvious and indisputable. And the starting point under AEDPA is to determine what is that clearly established federal precedent. Here it's Crawford and Davis. And the Court of Appeal, the California Court of Appeal, recognized that Davis and Crawford is that controlling authority and recognized that the entire inquiry is whether the statements that Veronica made to her aunt were testimonial. Under Davis, what we're looking for is solemnity, some sort of formality. The Supreme Court, the United States Supreme Court, has not given a very comprehensive definition of what testimonial means, but it has provided some clues, things that would be a proxy for in-court live testimony, such as ex-party communications in a preliminary hearing or grand jury, things of that nature. But the Court did cite approvingly to King against Brazier, and I think you will agree with your adversaries' point that factually King against Brazier is indistinguishable from this case. That's correct. However, King versus Brazier is not a holding of the United States Supreme Court, and it was not discussed with really any sort of analysis. And in the very selfsame case in which King versus Brazier was mentioned, the United States Supreme Court explicitly declined to decide whether and when statements made to someone other than law enforcement personnel are testimonial. So in the very selfsame case in which the High Court refers to King versus Brazier, the High Court still says, we're not going to decide whether statements to non-law enforcement personnel are testimonial. Not in this case. That's for another day. Therefore, even though Brazier is out there, it does not stand as a controlling federal precedent. And therefore, the Court of Appeal, the State Court of Appeal, could not run afoul of clearly established federal precedent. It's not a controlling federal precedent, certainly. But in looking at the question of whether there's an unreasonable application of Supreme Court law, doesn't King against Brazier give us a hint of where the Supreme Court would come out on identical facts, and therefore suggest an unreasonable application? It might be. However, it has to be something that's clearly established by the Supreme Court. And the Supreme Court hasn't established that. And so when you're looking at what the Supreme Court actually established, in which it actually declined to decide whether and when statements to law enforcement or to non-law enforcement personnel qualifies as testimonial, when you look at what the Supreme Court actually has done, then we're left with Davis v. Crawford. Aren't you merging the distinction between contrary to a Supreme Court decision and an unreasonable application of a Supreme Court decision? Unreasonable application necessarily will consider some facts that are not directly confronted by the particular precedented issue. Right? Yes. Yes. Why isn't that the case here? That's opposing counsel's argument. Right. And that's because here what we're dealing with is we've got the general principles, and we're dealing with whether the state court reasonably applied those general principles. But isn't that why it's so difficult for you that King is indistinguishable on the facts? I suppose so. But, again, King is not the case that controls. Which leads you back to George Corwin's question. Right. Davis is the case that controls. And the Supreme Court said. Well, now, his question is there's always going to be, when we're talking about a clearly established principle and whether it was unreasonably applied, it's always going to be the case that there's something different. Right. And so I'm waiting for your response to that. So you have to take the general principles you have, okay, and you try to apply that as reasonably as you can, even though it might not fit perfectly. And the general principle that we have is what Davis said, which is testimonial is solemnity, formality. It's not, it's not, it's not, we're not going to say whether or not it's the statements to non-law enforcement. We're not going to say that for another day. And so that's the principle that we're left with. So even though Brazier's out there, there might be someday a case that the U.S. Supreme Court says, yes, okay, we're going to say that this is, this would be testimonial. But until the Supreme Court establishes that, clearly establishes that, we're left with what we have. Why did they cite King? How do you think we should interpret that? I think that, well, the way that they cite King versus Brazier is to simply say to Davis, look, your citation to that case is not what we have here. It would be more helpful if the facts of that case were different, but it's not that case. And then there was no further discussion or analysis. So to answer my question about what should we make of that, you're essentially telling me you think it's an asterisk or a footnote and they set it aside. They just note it. Yeah. The controlling federal precedent doesn't include dicta. It's only the holdings of the court. We know that. Yeah, right. And so that's what we have here when we deal with Davis and what they explicitly did and what they explicitly said. Thank you. So when we look then at what the state court did, they cite Crawford. They cite Davis. The state court went through and did the analysis. Is there formality? Is there solemnity here? Is this the kind of statement that a person would reasonably construe as something that would be available for later use in a prosecution? And like you pointed out earlier, Judge Kogan, what about this statement would make a reasonable person think that this would be something used in a future prosecution? This was an 18-year-old girl who had just been victimized, who came home and was so rattled and shaken up by what had happened to her that she's talking to her aunt about what had happened to her. This is not something that's in response to interrogation like you would have in a law enforcement type situation. This is not something like ex parte testimony. This isn't affidavits. There is no sort of indicia of the solemnity that's required for testimonial statements. You just don't have that in this case. And the California Court of Appeal recognized that and therefore applied the law that it had before it. And the question really is, is there a possibility for fair-minded disagreement? If there is possibility for fair-minded disagreement amongst reasonable jurists, we win. The California Court of Appeal got it right. They were fine. They got it right. Even if there is room for fair-minded disagreement. Actually, it sounds more like what you're saying is that the California Court of Appeal got it wrong, but not wrong enough for us to say that reasonable jurists couldn't disagree and therefore we cannot undo what it did. Is that your argument? Under ADPA, yes. That would be correct. Okay. And that's the point of the standard of review. And, I mean, even when you have reasonable fair-minded disagreement and even if this case were to come up on direct review for this court, direct review is very different from the ADPA. All right. But you would agree that if it came up on direct review, we should probably hold this statement inadmissible. If this came up for direct review, this court could hold it inadmissible. It could. But because we're on the ADPA habeas standard, I would say no. That would not be the correct disposition. Finally, another reason why this is very different from the kind of testimonial statements that the Supreme Court has talked about is we're dealing here, again, with statements to a family member. There's no criminal sanction that's possible like you would have if you lied to the police officers. There's nothing here that would prevent the victim from or make the victim feel like, you know, I'm in some sort of a special environment here in which I'm conveying this message. She's in the safety of her home. She's seeking solace, and that's why she's saying what she's saying. And unless this court has any further questions, the respondent is ready to submit. Judge, anything further? No questions. Thank you, Your Honor. Nothing further. Thank you. Counsel, we'll give you two minutes. Thank you very much. Just very quickly, I disagree with counsel's statement regarding ADPA. Because the court said it also clearly includes legal principles and standards enunciated in the court's decision. And to be clearly established, the Supreme Court precedent does not need to be directly on point, but it must provide a governing legal principle and articulate specific considerations for lower courts. That's exactly what the court did when it cited King v. Brazier. Davis actually did away with some of the solemnity requirements because we're talking about a 911 call and then a statement out in the field. And they distinguished that from Crawford and said, sure, it's not as solemn, but it still applies. Counsel, isn't this very different because it's a statement to a family member? I don't believe it is very different because what counsel's talking about in terms of there's no criminal liability for a statement to the aunt, well, there is criminal liability in a 911 call. If you call 911 and you falsely report a crime, there's liability there, yet the court said it's not testimonial. So whether or not there's a criminal liability I think is irrelevant. The question is, you know, she made these statements to her aunt and then they devised a plan based on that statement to capture the defendant. And that's exactly what they did immediately. And so that plan brought the defendant in, the police were called, the statement was made, the witness took off and never came back. And the defendant was tried completely, just like Sir Walter Raleigh, on that untested statement. This woman was never, ever subjected to any type of cross-examination whatsoever. So I don't think that you can pull the court's reference to King v. Brazier and just say it doesn't matter. It does matter. That is one of those articulated, specific considerations for lower courts to consider. And the fact that the court declined to decide whether or not statements to other than law enforcement officers is irrelevant because that wasn't the issue before the court. But the fact that the court threw this in is important because it wasn't the issue before the court. So the fact that the court said, you know, this is important makes it important. Thank you, counsel. Thank you very much. Thank you. My thanks to both counsel. We'll go on to the next case.
judges: Cogan, O'scannlain, Christen